## AFFIDAVIT OF SPECIAL AGENT ELLIOT RIZZO

I, Special Agent Elliot Rizzo, depose and state as follows:

1. I am a Special Agent with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been an ATF Special Agent since March 2014. I am currently assigned to work with other federal, state, and local law enforcement agencies in a task force effort focusing on federal firearms, explosives and controlled substance violations. As part of my employment with ATF, I attended the ATF National Academy in Glynco, Georgia, where I received specialized training on topics which included, but were not limited to, the federal firearms, arson, and explosives laws; the identification of firearms and ammunition; investigative techniques; and 4th Amendment search and seizure law. Since becoming an ATF Special Agent, I have participated in several investigations, which resulted in the execution of arrest and search warrants. Based on my training and experience as an ATF Special Agent, I have received specialized training in the field of firearms investigations and enforcement.

2. Based on my training and experience as an ATF Special Agent, I know that it is a violation of 18 U.S.C. §922(g)(1) for a felon to possess a firearm, and that it is a violation of 18 U.S.C. §924(c) for a person to brandish a firearm in the furtherance of a crime of violence. As set forth below, there is probable cause to believe that (1) Mark LEASTON and Oswaldo SOUSA violated 18 U.S.C. §922(g)(1) on January 7, 2016; and (2) LEASTON and Dejahn HARRISON violated 18 U.S.C. §924(c) on February 1, 2016, when LEASTON brandished a firearm during an armed robbery and HARRISON aided and abetted the crime.

3. The information contained in this affidavit is based on my own investigation, oral and written reports by other law enforcement officers, physical surveillance, information from

1

confidential informants/cooperating witnesses, public records, database checks, and other investigations. The dates and times in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of supporting issuance of a complaint, I have not presented every fact learned during the investigation, but only that information necessary to fully support probable cause for a complaint.

### Gun Deal Involving LEASTON on January 7, 2016

4.      On or about November 25, 2015, a cooperating witness working for the ATF (the "CW")[1] obtained the cell phone number for Oswaldo "O" SOUSA. The CW informed agents that SOUSA was a close associate of Mark "Murder" LEASTON, and that both were members of the Bloods street gang. The CW further stated that the two were known to carry firearms and had been involved in robberies targeting rival street gang members in the past. The CW subsequently exchanged numerous texts with SOUSA concerning possible firearms transactions involving a number of different firearms. In these text messages, SOUSA indicated that he was obtaining firearms from an individual who lived in Everett, Massachusetts – based upon a review of public records, LEASTON resides at 119 Walnut Street in Everett. The CW and SOUSA eventually agreed that SOUSA would sell the CW a .380 caliber semi-automatic pistol on January 7, 2016.

---

[1] The CW has requested that his/her identity not be revealed for fear of reprisal or harm to his/her physical safety. I am aware of the CW's identity and have met with the CW personally. The CW has provided accurate, truthful, and reliable information to law enforcement, including the ATF, in the past and continues to do so to the present. The CW has a criminal history which includes adult convictions for Breaking and Entering, Larceny, Threatening, Credit Card Misuse and Possession of Cocaine. The CW is presently receiving monetary benefits from the ATF as well as seeking a benefit with pending state criminal cases. The CW is also seeking protection from retaliation based upon the CW's cooperation with law enforcement in this case, including possible relocation.

As to this particular firearm, SOUSA again informed the CW that SOUSA (who lives in Chelsea, Massachusetts) needed to get the pistol in Everett. The CW agreed to pick SOUSA up, and to go to get the handgun.

7. At approximately 2 pm, SOUSA called the CW and asked the CW to come get SOUSA in Chelsea. The CW met with agents/officers at a prearranged location. The CW was provided with $1100 in order to purchase the firearm, and the CW was equipped with a video/audio recording device prior to meeting SOUSA. In addition, the CW's vehicle and the CW were searched for contraband with negative results. The CW then drove to meet SOUSA in Chelsea. Thereafter, SOUSA had the CW drive them to the area of the ANC Market in Everett. SOUSA took the $1100 from the CW and exited the CW's vehicle.

8. Surveillance units observed SOUSA walk to the front steps of 119 Walnut Street in Everett – per public records, this is the residence of LEASTON. A Massachusetts Criminal History check for LEASTON lists his home address as 119 Walnut Street, Everett, Massachusetts. Further, a Massachusetts RMV search also confirmed the home address of LEASTON to be 119 Walnut Street in Everett. Officers observed SOUSA enter the residence through its front door. Shortly thereafter, surveillance units observed SOUSA exit the front door of the residence, walk back to the CW's vehicle and enter the vehicle.

9. In the vehicle, SOUSA provided the CW with a Ruger LCP Crimson Trace .380 caliber semi-automatic pistol, bearing serial number 371-80926. The firearm was loaded with one round in the chamber and one round in the magazine. SOUSA also gave the CW a plastic bag with 9 rounds of .380 caliber ammunition. The firearm and ammunition were recovered by investigators from the CW at a prearranged location after the deal took place. During the firearm

deal, SOUSA told the CW, "Yo Murda said if you sell this shit, he'll buy it back." Based on or investigation, we are aware that LEASTON's street name is "Murder."

10. Shortly after the deal took place, while meeting with agents, the CW conducted a recorded call with SOUSA. In the call, the CW stated that he/she had test-fired the handgun already. The two also discussed that CW might use the handgun later that night to commit a shooting – the discussion of a potential shooting by the CW was in furtherance of the CW's cover story that the CW was still acting as a member of the Bloods street gang. SOUSA told the CW to wear black clothes and black gloves if the CW used the gun that night.

11. Based upon a review of public records, I have confirmed that both LEASTON and SOUSA had committed crimes for which the penalty exceeded one year at the time that they possessed the above firearm on January 7, 2016. Therefore, they were legally prohibited from possessing the firearm identified above under federal law. I have also confirmed that the firearm was not manufactured in Massachusetts and, therefore, it traveled in interstate or foreign commerce.

12. Following the firearm transaction, we obtained toll records for the phone used by SOUSA. Based upon a review of these records, we identified a phone number, 857-363-8203, which had a call pattern with SOUSA's phone that is consistent with a phone being used by the source of supply for the firearm obtained on January 7, 2016. The subscriber for this cellular telephone is listed as Mark A. Leaston, with an address of 119 Walnut Street, Everett, Massachusetts.

### Armed Robbery on February 1, 2016

13. On January 30, 2016, LEASTON sent the CW two videos, by text message, in which LEASTON displayed a .380 caliber semi-automatic pistol and a Tec-9 9mm semi-automatic pistol. These text messages were sent from a phone with the number 857-259-3316. CW-1 identified that the individual in the video was LEASTON based upon various facts, including the CW recognizing LEASTON's voice; the CW had a prior relationship with LEASTON. Based on these videos, the CW agreed to purchase the .380 caliber semi-automatic pistol from LEASTON on February 1, 2016, for $600. In a series of text messages in which the two arranged for the gun deal[2], LEASTON attempted to recruit the CW (who is a former Bloods street gang member) to LEASTON's Bloods street gang set. In one text, LEASTON stated: "U need to get down with this Miller movement." In another text, LEASTON asked: "U gonna get with this Miller movement ...." Along these lines, I am aware that there is a Bloods street gang set which uses the name "Miller."

14. On February 1, the CW met with LEASTON in Everett to do the gun deal. Prior to arriving at the location, the CW was contacted by phone by LEASTON and given the location where the gun buy was to take place. The CW was equipped with audio and video recording equipment. The CW was also surveilled by law enforcement to the general area of the buy, but law enforcement was unable to set-up on the actual street where the buy was to take place due to concerns that surveillance would be detected. Officers did observe a red Nissan Altima, with two black males in the front seat, drive onto the street where the CW was waiting for LEASTON.

---

2  LEASTON again used the phone with the number 857-259-3316 to engage in these communications and the subsequent communications related to the proposed firearms transaction, which ended up being an armed robbery.

15. The following facts are taken from both the CW and the recording generated by the device worn by the CW. The CW observed LEASTON and another black male (subsequently identified by investigators as Dejahn HARRISON) in a red Nissan Altima. HARRISON was driving the vehicle. The CW used his/her cell phone to alert LEASTON that the CW was in a truck near LEASTON's location. LEASTON and HARRISON pulled up beside the CW's vehicle. The CW entered the vehicle, and got into the back seat, while LEASTON and HARRISON remained in the front seat. The vehicle drove approximately a block away from the CW's vehicle, which was still running. At the time that HARRISON's vehicle drove away, its doors were locked with the child safety lock, which prevented the CW from being able to unlock or open the doors in the back seat.

16. While in the vehicle, the CW provided LEASTON with the $600 which LEASTON passed to HARRISON to count. During the time that HARRISON was counting the cash provided by the CW, LEASTON showed the CW the .380 caliber pistol, which had a loaded magazine. LEASTON maintained possession of the handgun the entire time. LEASTON placed the magazine back into the handgun, pointed the gun at the CW, and informed the CW that he was robbing the CW. LEASTON initially told the CW to get out of the vehicle, which the CW could not do because the doors were locked. When LEASTON made this demand, HARRISON opened the driver's side door as if to open the back door by the CW. LEASTON then demanded that the CW give LEASTON any other money on the CW's person. When LEASTON made that demand, HARRSION sat down again in the driver's seat. After the CW pleaded that he had no money, LEASTON agreed to allow the CW out of the vehicle. HARRISON got out of the vehicle in order to open the back door by the CW. As the CW was exiting the vehicle, LEASTON stated

that he should shoot the CW. The CW then walked back to his/her vehicle. Right after the robbery, officers drove to LEASTON's residence at 119 Walnut Street in Everett, and observed a red Nissan Altima (Mass Reg. 597-ZM6) parked across the street from LEASTON's residence with a black male in the driver's seat. HARRISON is a black male.

17.  The armed robbery was video recorded by the equipment which the CW was wearing. There are clear images of LEASTON and HARRISON taken during the armed robbery. HARRISON was identified as one of the individuals in the video by agents who matched it to the Massachusetts RMV photo of HARRISON. Along these lines, HARRISON was stopped the night prior to the armed robbery by Boston Police officers driving the red Nissan Altima. The CW also subsequently identified HARRISON as the other individual in the vehicle through a photo array. Like LEASTON, based on our investigation, HARRISON is a member/associate of the Bloods street gang. Based upon a review of public records, HARRISON is presently on an eight-year term of probation in Massachusetts based upon a 2012 conviction on four counts of armed robbery; he also received a sentence of three-five years incarceration for illegal possession of a firearm in the same case.

18.     Based on the above, there is probable cause to believe that (1) Mark LEASTON and Oswaldo SOUSA violated 18 U.S.C. §922(g)(1) on January 7, 2016, and (2) LEASTON and Dejahn HARRISON violated 18 U.S.C. §924(c) on February 1, 2016, when LEASTON brandished a firearm in furtherance of a crime of violence and HARRISON aided and abetted the crime.



_____
ELLIOT RIZZO
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me this __4__ nd day of February, 2016.

_____
HON. M. PAGE KELLEY
UNITED STATES MAGISTRADTE JUDGE